GEORGE ROGERS *vs.* RAY'S MARKET, INC., *d.b.a.* THE TIGER.

APRIL 29, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This petition for compensation under the workmen's compensation act was heard and denied by the director of labor.   The petitioner thereupon appealed to the superior court and, after hearing, a justice of that court filed a rescript in which he made certain findings of fact and awarded the petitioner compensation at the rate of $11.25 a week from June 11, 1938 until further order of the court.   A decree having been duly entered, in accordance with this decision, the respondent appealed to this court.

The facts are practically undisputed.   The evidence shows that the petitioner, who weighed about one hundred thirty-five pounds, was employed as a meat cutter by the respondent.   When occasion required and as part of his duties, he

had to carry sides of beef from the store down to the cutting room, which was located in the front part of the basement of the store. The basement ceiling was low, and, at a certain place, before reaching the cutting room, there was an exposed water pipe attached to and running across the ceiling.

On June 2, 1938, the petitioner was going through the basement of the cutting room with a side of beef, weighing about two hundred pounds, on his left shoulder. In order that the beef might clear the basement ceiling, he was obliged to walk in a stooped position, with Sidney Brawner, a clerk in the grocery department of the respondent's store, holding up the lower end of the side of beef so that it would not drag along the floor. While proceeding in this manner, the upper portion of the side of beef struck the water pipe that projected below the ceiling, jerking the petitioner backward off balance and causing the meat to fall to the floor. With Brawner's assistance, he first brought the side of beef to the cutting room and then reported the accident to his employer. The petitioner testified that following this accident his "shoulder felt as though it was wrenched", and that he "had pain in the heart somewhat, in the heart region."

The petitioner continued to work, avoiding very heavy lifting, until Thursday, June 9, 1938, when he met with another accident. He testified that on that day he was injured while raising a back of beef, weighing about one hundred pounds, from the platform scale to the cutting bench. His testimony on this point is as follows. "In raising one of those backs of beef from the scale to the bench, I got a very sharp pain in the lower abdomen or groin, which caused me to drop this beef right onto the scale. I went back a pace or two and I doubled up with the pain, and held the injured part." He also testified that on this occasion he felt a strain through his entire system, especially the left shoulder. The testimony shows that immediately following this accident he notified his employer and went out for a cup of coffee.

Shortly after his return, the store closed for the day and he went to his room in Newport, his home being in Central Falls where he spent the week-ends.

It appears in evidence that the petitioner continued to work until about noontime of the following Saturday, when, because of the pain that he was suffering, he decided to go to his room and rest for an hour to see if he "would feel well enough to finish the day." The petitioner testified that as he was getting ready to leave, his employer, who happened to come down to the cutting room and learned what he intended to do, told him that "any man that goes home on a Saturday can not work for him, and he fired me." Before going to his room, the petitioner consulted a Dr. Maurice J. Butler, of Newport, who advised him to go to bed and rest. A few days later, he returned to his home in Central Falls, where he placed himself under the care of Dr. Edward R. Thompson of Pawtucket.

The rest of the evidence consists of medical testimony. Doctors Thompson and Hugh J. Hall testified for the petitioner, and Doctors Harry Triedman and Charles F. Gormly testified for the respondent. A deposition from Dr. Butler is also in evidence.

In so far as pertinent, Dr. Thompson's testimony with reference to the petitioner's injuries, his condition at the time of the trial in the superior court, and the cause of his then existing condition, is as follows. "He had an acute inguinal injury, bi-lateral, with tendency to herniation. He had neuro-muscular strain of the pectoris major muscle on the left side of the body, acute heart strain of the muscle of the heart, and neurasthenia, which is a nervous condition that he manifests now. . . . From the findings and history I came to the conclusion that the physical conditions are of traumatic origin, that is, from the injury, and they were derived from the nature of the work he was doing, according to the story and the matter of the injury."

Doctor Hall testified that on April 8, 1937, over a year before the accidents in the instant cause, and while the petitioner was employed at the Anaconda Wire & Cable Company, he made a complete examination of the petitioner, as he did of all other employees in compliance with the rules of that company. At that time, he found nothing "abnormal as to his chest or shoulder region"; he received no complaint from the petitioner of pain in the lower abdomen; and he found no hernia on examination, although the inguinal rings were abnormal. On April 18, 1939, the petitioner asked him to be a witness in this case, telling him that "he had pain in his chest, and he had received an injury." As the petitioner was not his patient, Dr. Hall did not examine him fully at that time but did look at his chest and observed that "the left side of his chest was more developed than the right side, . . . quite a difference."

Doctor Triedman, who had treated the petitioner from June 22 to July 10, 1938, testified that when he examined the petitioner he found no objective evidence of injury; that while the petitioner complained of pain in the lower abdomen, he found no hernia; that at that time the petitioner weighed about one hundred and fifteen pounds and was extremely nervous, with a rapid heart, high blood pressure, and "a little over-development of the left chest." He further testified that as the petitioner's condition was consistent with a thyroid disease, he advised him to go to Dr. Gormly for a basal metabolism test in relation to that disease, and to consult Dr. Donley, a specialist in nervous diseases, for his neurasthenia.

Doctor Gormly, who examined the petitioner for the respondent on July 26, 1938, testified that he found a "suggestion of fullness over the heart region"; a rapid heart rate, which is evidence of cardiac strain; extreme nervousness and trembling of the hands. He further testified that, finding no rupture or other evidence of traumatic injury,

he ascribed "all his symptoms to thyroid disease, not to an injury." In cross-examination, Dr. Gormly admitted that he did not employ the basal metabolism test or the Means test, the latter apparently being a check on the former test, in reaching his conclusion that the patient was suffering from hyperthyroidism; that some of the petitioner's symptoms were elements present in neurasthenia, which he described as an obsolete diagnosis to indicate a "state of fatigue"; and that the fullness in his left chest was probably of long standing, "may be from childhood."

The deposition of Dr. Butler was taken and introduced in evidence by agreement of the parties. The substance of his deposition is that the petitioner came to him with a history that "he had lifted something at the Tiger Market and strained himself"; that he, the witness, only examined the petitioner's lower abdomen, as no other injury was complained of; that he found an enlarged right inguinal ring, but no hernia; that such a condition might be congenital or the result of exertion; and that it was impossible to positively determine the actual cause of such condition.

The petition for compensation alleges the character and extent of petitioner's injuries as follows. "Acute inguinal injury; neuro-muscular strain of pectoralis major muscle— left, acute heart strain (of cardiac muscle), neurasthenia, nervous shock, and abdominal strain and injury."

In a carefully prepared rescript, the trial justice found that the petitioner was not a mental case nor was he malingering; that he suffered accidental injuries on June 2 and 9, 1938, while in the respondent's employ; and that at the time of the trial he was suffering from the effect of the strains received while at work on those days. The trial justice fairly reviews and comments upon the medical testimony in his rescript. He concludes his consideration of this point in the following language. "Whatever his groin condition may be, we do not believe it is congenital. Whether

petitioner's trouble is enlarged inguinal rings, or strained inguinal canal, or strained lower muscles of abdomen, or thyroid condition, is not the all important thing. The learned physicians may settle this symposium among themselves. In the meantime, however, the patient, *as a result of his injuries,* will be suffering pain in body and mind. . . . In our opinion petitioner has developed a general nervous condition *as a direct consequence of the injuries* which we have found he received to his chest and groin." (italics ours)

Briefly stated, the respondent's contention before us is that at the time of the trial in the superior court petitioner was in fact suffering from a hernia, and that his disability resulted from such hernia rather than from any of the causes alleged in the petition. The respondent bases this contention mainly on what it calls an admission by counsel for the petitioner in the presence of his client at the close of the testimony in the superior court, which the trial justice disregarded in reaching his decision.

The taking of testimony in the instant case was apparently concluded the day before the last day of the court year. Desiring not to prolong the case, petitioner's counsel, at the close of rebuttal testimony, stated to the court that he waived any claim of hernia. In the colloquy that followed between the trial justice and petitioner's counsel, the court advised counsel not to waive any of his client's rights merely to save time. Counsel, however, after suggesting that the petitioner be examined by a physician of the respondent's choice, who, in counsel's opinion, would then find a hernia, finally and definitely waived any claim of hernia.

This incident constitutes the premise for the respondent's above stated conclusion. We are clearly of the opinion that the respondent's contention is unsound. The statement of petitioner's counsel, upon which the respondent so strongly relies, was merely an expression of *his* opinion as to what a

physician would find if the petitioner were then examined. What he based the statement on does not appear of record, and in such circumstances his opinion is pure speculation on his part, and therefore in no sense an admission that would bind the petitioner to his prejudice.

Furthermore, the incautious remark of petitioner's counsel, which the respondent uses as the basis for his contention, was nothing more than a gratuitous statement. As the trial justice says in his rescript: "He (the petitioner) does not claim to have a hernia but does claim to have enlarged inguinal rings."

Finally, when the statement in question was made at the trial of this cause, not only did the petitioner's counsel suggest that the respondent have a physician of its own choice then examine the petitioner, but the court also clearly indicated that it stood ready to hear the parties on all issues irrespective of the time that might be consumed. In these circumstances, the respondent saw fit to remain silent. If it considered the question of a hernia so important to its case then, as it argues now after an adverse decision, it could have asked the court to have the petitioner examined, as suggested by petitioner's counsel. Such conduct certainly would have been fairer both to the court and to the petitioner.

The instant cause is purely one of fact. It is well established with us that in a suit under the workmen's compensation act, in the absence of fraud, the findings of fact by the trial justice on competent evidence are conclusive. We find no error in this cause.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Kirshenbaum & Kirshenbaum,* for petitioner.

*Henry M. Boss,* for respondent.